**GLAZIERS AND GLASSWORKERS UNION LOCAL 252 ANNUITY FUND, et al., Plaintiffs,**

v.

**NEWBRIDGE SECURITIES, INC., Janney Montgomery Scott, Inc., Provident National Bank, and Socket, et al., Defendants.**

v.

**James A. WILLIAMS, et al., Third Party Defendants.**

Civ. A. No. 90–8101.

United States District Court, E.D. Pennsylvania.

March 19, 1993.

Gerald E. Arth, Ira B. Silverstein, Leslie M. Gerstein, Brian M. Fleischer, Lisa A. Carney, Fox, Rothschild, O'Brien & Frankel and Kenneth M. Kolaski, Reed Smith Shaw & McClay, Philadelphia, PA, for plaintiffs.

Christopher D. Warren, Conrad, O'Brien, Gellman & Rohn, P.C., Philadelphia, PA, Judith Welcom, Brown & Wood, Felice M. Batlan, John J. O'Connell, Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City, William A. De Stefano, De Stefano & Warren, P.C., Philadelphia, PA, for defendants.

Warren T. Pratt, Drinker, Biddle & Reath, Philadelphia, PA, for movant.

Robert W. Hayes and Scott M. Waldman, Cozen & O'Connor, Philadelphia, PA, for cross-claimants.

Elizabeth H. Fay, Philadelphia, PA, for Janney Montgomery Scott, Inc., cross-defendant.

Anjali Jesseramsing, Geoffrey A. Kahn, Arthur Makadon, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Provident Nat. Bank, cross-defendant.

Walter R. Milbourne, Paula D. Shaffner, Saul, Ewing, Remick & Saul, Philadelphia, PA, for Jungers, O'Connell & Bacheler, P.C., John P. Jungers.

Patrick Matusky, Jennifer L. Haltzman, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Equibank, Inc.

*MEMORANDUM*

JOYNER, District Judge.

The plaintiffs in this action are the Glaziers and Glassworkers Union Local 252's Annuity, Vacation, Pension and Health and Welfare Funds (the "Plans") as well as two trustees of the Plans. Plaintiffs contend that between 1985 and 1990, Michael Lloyd ("Lloyd") was the investment manager of the Plans and during that time he systematically defrauded the Plans and made speculative investments with the Plans' assets causing the Plans to lose approximately $3 million. Plaintiffs brought federal actions against, *inter alia*, Janney Montgomery Scott, Inc. (their former brokerage firm), Provident National Bank (their former custodian of assets), Newbridge Securities (their former clearing broker), Jungers, O'Connell & Bacheler and John P. Jungers (their former accountant and accounting firm), Equibank, Inc. t/a Liberty Savings Bank (Lloyd's personal bank) and all the former and present trustees and administrators of the Plans [1] ("the Trustees"). The Trustees asserted cross-claims for contribution and indemnification against the Jungers, O'Connell & Bacheler and John P. Jungers ("Jungers"), Equibank and Newbridge Securities, Inc. ("Newbridge").

Presently before the court are the motions of Jungers and Newbridge to dismiss the Trustees' cross-claims under Fed.R.Civ.P. 12(b)(6) and Equibank's motion for judgment on the pleading as to the cross-claims under Fed.R.Civ.P. 12(c). For purposes of this motion, Jungers, Newbridge and Equibank will be referred to as "the defendants." For the reasons which follow, we will grant these motions.

■ A court may grant a motion to dismiss in accordance with Fed.R.Civ.P. 12(b)(6) if it appears beyond a doubt that the plaintiff can prove no facts to support the relief requested. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 179 (3d Cir.1988).

Fed.R.Civ.P. 12(c) permits a court to enter judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial." *Paskvan v. Cleveland Civil Service Com.*, 946 F.2d 1233 (6th Cir.1991); *Damron v. Smith*, 616 F.Supp. 424 (E.D.Pa. 1985). A motion for judgment on the pleadings is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss. Thus, the court must accept as true all well plead factual allegations of the non-moving party, and must view all inferences in the light most favorable to that party. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989).

Previously, this court dismissed the claims brought by the plaintiffs against Jungers and Equibank entitled "ERISA—Participation In a Fiduciary's Breach" on the grounds that the Employment Retirement Income Security Act ("ERISA") does not expressly or impliedly provide for any such cause of action. We also dismissed plaintiffs' state law claims against Jungers and Equibank for lack of jurisdiction in *Glaziers & Glassworkers Union Fund, et al. v. Newbridge Securities, et al.*, 823 F.Supp. 1185 (E.D.Pa.1992) ("*Glaziers I* ") and *Glaziers & Glassworkers Union Fund, et al. v. Newbridge Securities, et al.*, 1992 WL 368106 (E.D.Pa.1992) ("*Glaziers II* "), respectively. In accordance with the terms of a settlement agreement, plaintiffs voluntarily withdrew their claims against Newbridge. Thus the only claims remaining against Jungers, Equibank and Newbridge are the Trustees' cross-claims.

■ Once again, the parties have presented this court with a rather novel and contentious issue. The defendants argue that ERISA does not support a claim for contribution or indemnification either expressly, by implication or through the creation of federal common law. The Trustees urge the court to create federal common law by incorporating that portion of the law of trusts which would permit such a claim.

1. By Order dated September 30, 1992 all of these actions were consolidated leaving the leading case as Civil Action No. 90–8101.

As would be expected, the Trustees cite to many cases which conclude that incorporation of the trust law principal that there is a right of contribution and indemnification between co-fiduciaries is consistent with ERISA's overall scheme, *Chemung Canal Trust Company v. Sovran Bank/Maryland,* 939 F.2d 12 (2d Cir.) *cert. denied,* —— U.S. ——, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1991); *Alton Memorial Hospital v. Metropolitan Life Ins. Co.,* 656 F.2d 245 (7th Cir.1981); *Jones v. Trevor, Stewart, Burton and Jacobsen, Inc.,* 1992 WL 252137 (N.D.Ga.1992); *Murphy v. The Traveler's Insur. Co.,* 1985 WL 1469 (N.D.Ill.1985), and the defendants correlatively cite to numerous cases which hold to the contrary, *Schloegel v. Boswell,* 766 F.Supp. 563 (S.D.Miss.1991); *Physicians Healthchoice, Inc. v. Trustees of Automotive Employee Ben. Trust,* 764 F.Supp. 1360 (D.Minn.1991); *Hunt v. Magnell,* 766 F.Supp. 727 (D.Minn.1990); *Narda, Inc. v. Rhode Island Hospital Trust National Bank,* 744 F.Supp. 685 (D.Md.1990). However, the issue presented by these motions is not whether co-fiduciaries can apportion their obligations as between themselves, but whether a fiduciary has a right of contribution and indemnification from a non-fiduciary. The parties do not dispute that neither Jungers, Equibank nor Newbridge are fiduciaries. Therefore, the Trustees further argue that there is no principled difference between permitting a right of contribution against a co-fiduciary and a non-fiduciary.

In support of that argument, the Trustees cite to language in *Chemung* and *Alton Memorial* which generically state that ERISA permits a cause of action for contribution. However, random statements cannot be extracted from the whole and read out of context to support a particular proposition. The two cases cited by the Trustees were limited to the question of whether co-fiduciaries could seek contribution in and amongst themselves. *E.g., Chemung,* 939 F.2d at 16 ("Full responsibility should not depend on the fortuity of which fiduciary a plaintiff elects to sue.") There is nothing to indicate in either of these cases that these Courts of Appeal addressed issues not presented by the facts before them.

The Trustees also cite to a Western District of Pennsylvania case, *Schaffler v. McDowell National Bank,* 1985 WL 17715 (W.D.Pa.1985), to support their position. However, while *Schaffler* held that ERISA permits a cause of action against a non-fiduciary who knowingly participates in a breach of trust by a fiduciary, an issue decided to the contrary in *Glaziers I,* it does not reach a definitive decision on the issue of whether ERISA permits claims for contribution and indemnification by a fiduciary against a non-fiduciary. *Schaffler* 1985 WL 17715, at *4. The two cases which subsequently put *Schaffler* to the test, *McLaughlin v. Biasucci,* 688 F.Supp. 965 (S.D.N.Y. 1988) and *McLendon v. Continental Group, Inc.,* 1986 WL 11789 (D.N.J.1986), found that *Schaffler* "erred in leaping from a beneficiary's right to sue to a fiduciary's right to contribution." *McLendon,* 1986 WL 11789, *2. Furthermore, both of these subsequent cases squarely address the issue presently before us and both concluded that ERISA's overall scheme does not support a fiduciary's claim for contribution or indemnification from a non-fiduciary. *McLaughlin,* 688 F.Supp. at 968 ("Joint liability under ERISA can be predicated only upon liability as a co-fiduciary or liability directly to plan beneficiaries"); *McLendon,* 1986 WL 11789, *2 (ERISA does not provide for a contribution claim by a fiduciary against a non-fiduciary); *see also Massachusetts Laborers' Health and Welfare Fund v. Varrasso,* 111 F.R.D. 62, 64 (D.Mass.1986) (claim for contribution from third party defendant non-fiduciary brought by fiduciary is contrary to Congressional intent of ERISA). Thus, despite the numerous cases that have dealt with the issue of contribution between co-fiduciaries, there is very little case law providing guidance for the issue of contribution from a non-fiduciary to a fiduciary. However, the cases that have addressed the issue conclude that no such cause of action exists.

In our prior ruling we relied on the four-prong analysis of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) to determine that ERISA does not impliedly provide a cause of action against non-fiduciaries who knowingly participate in a fiduciary's breach

of duty. *Glaziers I*, 823 F.Supp. at 1187.[2] This test is inapplicable to our analysis here. *Chemung*, 939 F.2d at 15 (the *Cort v. Ash* methodology is an inappropriate tool for analyzing whether federal common law may be created). In determining whether courts may create federal common law, we must determine whether it is "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Van Orman v. American Insurance Co.*, 680 F.2d 301, 312 (3d Cir.1982) quoting *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973). Furthermore, as we stated in *Glaziers I*:

> ... in *Firestone Tire and Rubber Co v. Bruch*, [489 U.S. 101,] 109 S.Ct. 948[, 103 L.Ed.2d 80] (1989) the Supreme Court found that only where ERISA is not clear on an issue may the federal courts look to the language and terminology of trust law to fill in the gaps. *Id.* at [108–110, 109 S.Ct. at] 953–54. In explaining the *Firestone* decision, the Eleventh Circuit stated in [*Useden v. Acker*, 947 F.2d 1563, 1581 (11th Cir.1991)] that "a court should only incorporate a given trust law principle if the statute's text negates an inference that the principle was omitted deliberately from the statute."

*Glaziers I*, 823 F.Supp. at 1187–88. Although the analyses used to determine whether a cause of action can be implied or created as federal common law are distinct, they are not completely separate. Both require that we consider the overall legislative scheme of and Congressional intent behind ERISA to determine whether the Trustees' claim can be either implied or created. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 156, 105 S.Ct. 3085, 3098, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring) (when determining questions of appropriate relief under ERISA, courts should look to traditional recoveries permitted and see if they conflict with the purposes and schemes

of ERISA); *See also Jones v. Trevor, Stewart, Burton and Jacobsen, Inc.*, 1992 WL 252137, *3 (N.D.Ga.1992) ("The proper question is whether or not there is a congressional intent to permit the fashioning of federal common law under ERISA and whether such common law would be consistent with the purposes and text of ERISA.") Accordingly, our reasoning and findings in *Glaziers I* are not wholly abrogated solely because the Trustees have advanced an alternative theory.

■ While we recognize that *Firestone* gave the federal courts the nod "to develop a federal common law of rights and obligations under ERISA-regulated plans," 489 U.S. at 110, 109 S.Ct. at 954, that case does not stand for the proposition that ERISA was intended to incorporate the entirety of the law of trusts. Only those portions of trust law which complement or are necessary to explain ERISA's statutory scheme can be spliced into the statute as federal common law. As the Third Circuit stated, "Congress has established through ERISA an extensive regulatory network and that federal courts should not lightly create additional ERISA rights under the rubric of federal common law." *Plucinski v. I.A.M. Nat. Pension Fund*, 875 F.2d 1052, 1056 (3d Cir.1989) citing *Van Orman*, 680 F.2d at 312.

■ ERISA was created for the benefit of plan beneficiaries and in order to regulate, not benefit or protect, fiduciaries. *Firestone*, 489 U.S. at 112, 109 S.Ct. at 955; *Narda*, 744 F.Supp. at 696; *Chemung*, 939 F.2d at 15; *Kim v. Fujikawa*, 871 F.2d 1427, 1433 (9th Cir., 1989); 29 U.S.C. § 1001(b). As stated in *Russell*:

> In addition, courts must always bear in mind the ultimate consideration whether allowance or disallowance of particular relief would best effectuate the underlying purposes of ERISA—enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries.

---

2. The four parts to the *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) analysis are: (1) whether the plaintiff is in the class for whose especial benefit the statute was enacted; (2) whether there is any indication that Congress

intended to imply a remedy; (3) whether a remedy is consistent with the purposes underlying the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. *Id.* at 78, 95 S.Ct. at 2088.

*Russell,* 473 U.S. at 156, 105 S.Ct. at 3098 (Brennan, J., concurring). In *Chemung,* the court found that Congress' silence on the issue of what remedies are available to fiduciaries permits an inference that Congress simply failed to address the issue and, thus, courts are free to fashion traditional trust law principles to augment ERISA. *Chemung,* 939 F.2d at 18. However, the test for determining whether a court can create common law requires that "the statute's text negates an inference that the principle was omitted deliberately from the statute." *Useden,* 947 F.2d at 1581; *Narda,* 744 F.Supp. at 696 ("when some clearly established aspect of common law is not incorporated, the omission would appear intended"). In *Narda,* the Maryland district court conducted a thorough analysis of the language of ERISA in determining that Congress' failure to include any remedy in the form of contribution and/or indemnification by fiduciaries was intentional. That court found that while ERISA explicitly incorporated that portion of traditional trust law which "describes in detail fiduciary duties and similarly apportions their liability," ERISA does not contain that portion of trust law which permits contribution and/or indemnification. *Narda,* 744 F.Supp. at 696–97. We agree with the *Narda* court that this failure is telling. The text and stated purpose of the statute negate the inference that Congress intended courts to create federal common law that would permit a fiduciary to seek contribution or indemnification from a non-fiduciary.

The Trustees argue that because ERISA requires administrators of employee benefit plans to engage accountants, 29 U.S.C. § 1023(a)(3)(A), Congress intended to hold the accountants liable for their failure to comply with the generally accepted auditing standards. However, in *Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146 (3d Cir.1989) the Third Circuit held that "state law has traditionally prescribed the standards of professional liability and, in the absence of clear indicia in the act or legislative history, we are reluctant to ascribe to Congress an intent to intrude in this area." *Id.* at 1153. Similarly, the Trustees have asserted valid state law claims against Equibank and Newbridge under the Pennsylvania Securities Act, 70 Pa.C.S.A. § 1–101 *et seq.,* the Uniform Contribution Among Joint Tortfeasor's Act. 42 Pa.C.S.A. § 8321 *et seq.* and the Uniform Commercial Code, 13 Pa.C.S.A. §§ 3419 and 4202. Thus, the Trustees are not left without a remedy against these defendants. The Trustees may still redress the wrongdoings of Jungers, Equibank and Newbridge, just not under the auspices of ERISA.

Our decision is best supported by the following paragraph from *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981):

> In almost any statutory scheme, there may be a need for judicial interpretation of ambiguous or incomplete provisions. But the authority to construe a statute is fundamentally different from the authority to fashion a new remedy which Congress has decided not to adopt. The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement ... The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs.

*Id.* at 95–7, 101 S.Ct. at 1583–4 (citations omitted).

The Trustees have also requested that this court exercise supplemental jurisdiction of their state law claims against Jungers, Equibank and Newbridge. Under the Judicial Improvements Act of 1990, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ..." 28 U.S.C. § 1367(a). This section affirmatively grants district courts with jurisdiction and the ability to entertain claims which they could otherwise hear only through the exercise of their ancillary or pendent jurisdiction. However, subsection (c) permits courts to decline to exercise this supplemental jurisdiction if one of the listed

four conditions are met. The applicable portions of subsection (c) provide:

> The district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis added).

■■ In determining whether to exercise supplemental jurisdiction, the initial inquiry is whether the federal and state claims are so related that they derive from a common nucleus of operative facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding. *Arnold v. Kimberly Quality Care Nursing Service*, 762 F.Supp. 1182, 1186 (M.D.Pa.1991). The district courts should take into consideration the accepted principles of judicial economy, convenience and fairness to the litigants. *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277 (3d Cir.1993) *quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Additionally, the district court should consider whether the litigation is in a relatively early stage, whether either party will be prejudiced by dismissal of the state law claims and whether the state law claims involve issues of federal policy. *Imperiale v. Hahnemann Univ.*, 776 F.Supp. 189, 200 (E.D.Pa.1991); David D. Seigel, Practice Commentary appended to 28 U.S.C. § 1367.

■ In this case, as a matter within our discretion, we conclude that the Trustees' cross-claims must be dismissed. Presently, there are three remaining defendants, Janney Montgomery Scott, Inc., Provident National Bank and the Trustees, and exclusive of the cross-claims at issue in these motions, the Trustees have cross-claims against only Janney Montgomery Scott, Inc. and Provident. All of the federal claims against Jungers, Newbridge and Equibank have been dismissed. The action against the Trustees was commenced only recently on August 4, 1992. Thus, our decision occurs at a relatively early stage in this litigation. Furthermore, the Trustees will not be prejudiced by our decision to dismiss the state law claims as they face no impediments to pursuing these claims in state court. In fact, a state court action is presently pending against the Jungers defendants in which the Trustees are joined as additional defendants. In light of the fact that the Trustees have state law claims against Jungers, Equibank and Newbridge, considerations of judicial economy and ease of disposition of the issues dictate that the federal forum does not provide the most efficient means for the Trustees to pursue their claims for contribution and indemnification.

An appropriate order follows.

### *ORDER*

AND NOW, this 19th day of March, 1993 upon consideration of the Motions of Defendants Jungers, O'Connell & Bacheler and John P. Jungers and Newbridge Securities, Inc. to Dismiss the Cross-claims and Equibank, Inc.'s Motion for Judgment on the Pleadings and the Trustees' responses thereto, it is hereby ORDERED that:

1. Jungers, O'Connell & Bachelor and John P. Jungers' Motion to Dismiss the Cross-claims is GRANTED.

2. Newbridge Securities, Inc.'s Motion to Dismiss the Cross-claims is GRANTED.

3. Equibank, Inc.'s Motion for Judgment on the Pleadings is GRANTED.

4. This Court declines to exercise supplemental jurisdiction over the Trustees' state law cross-claims.