**GLAZIERS AND GLASSWORKERS UNION LOCAL 252 ANNUITY FUND, et al., Plaintiffs,**

v.

**NEWBRIDGE SECURITIES, INC., et al., Defendants.**

No. 90–CV–8101.

United States District Court, E.D. Pennsylvania.

March 6, 1995.

Ira B. Silverstein, Leslie M. Gerstein, David B. Snyder, Lisa A. Carney, Fox, Rothschild, O'Brien and Frankel, Philadelphia, PA, for plaintiffs.

Elizabeth Hoop Fay, Karen Pieslak Pohlmann, Morgan, Lewis & Bockius, Philadelphia, PA, for defendant Janney Montgomery Scott, Inc.

Geoffrey A. Kahn, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for defendant Provident Nat. Bank.

Robert W. Hayes, Cozen & O'Connor, Philadelphia, PA, for third party defendants James A. Williams, et al.

## AMENDED MEMORANDUM AND ORDER

JOYNER, District Judge.

We address today cross-motions for summary judgment filed in this case arising under the Employee Retirement Income Security Act of 1974 (ERISA). The plaintiffs are Glaziers and Glassworkers Union Local 252 Annuity Fund, Glaziers and Glassworkers Union Local 252 Vacation Fund, Glaziers and Glassworkers Union Local 252 Pension Fund, and Glaziers and Glassworkers Union Local 252 Health and Welfare Fund, as well as two individual fiduciaries (collectively, "the Funds"). The Funds have filed a complaint alleging that Defendant Janney Montgomery Scott, Inc. (Janney), a securities brokerage firm located in Philadelphia, breached an ERISA fiduciary duty, causing losses to the Funds of close to $3,000,000. The complaint also alleges a breach of fiduciary duty under both state and federal common law. Further, the individual trustee defendants in this case have brought cross-claims against, *inter alia*, Janney, seeking indemnity and contribution. Janney and the Funds have each filed a motion seeking summary judgment.

Janney's motion seeks the dismissal not only of the claims brought by the Funds, but also of the cross-claims brought by the individual trustees. Plaintiffs have since settled their claim as to the defendant trustees, discharging any claim for contribution the trustees might have had against Janney. Thus, Janney's motion as to the defendant trustees has been rendered moot. For the reasons that follow, Janney's motion will be granted, while the Funds' motion will be denied.

## I.  BACKGROUND

### A.  Statement of Undisputed Facts

In the early 1980's, the Funds opened brokerage accounts with Janney, which were managed by a Janney executive named Michael Lloyd. Mr. Lloyd made investment recommendations to the Funds' administrator, who generally assented to the recommendations and allowed Mr. Lloyd to execute the proposed transactions. The relationship between Mr. Lloyd, as Janney's representative, and the Funds continued to the apparent satisfaction of all parties until 1985.

In June of that year, however, Janney began to suspect that Mr. Lloyd had engaged in fraudulent conduct with respect to a personal investment he made in a limited partnership. Pursuant to the limited partnership agreement he had entered, Mr. Lloyd was required to make an installment payment by February 1, 1985. When the partnership asserted, in the months after payment became due, that he had not made the payment in a timely fashion, Mr. Lloyd presented a copy of a cashier's check as proof of payment. It appeared to Janney, however, that Mr. Lloyd had altered the date of the check in an attempt to show that the payment was timely made. After Mr. Lloyd failed to provide a satisfactory explanation for these circumstances, Janney decided to fire Mr. Lloyd, and informed Mr. Lloyd's lawyer of its decision. In the face of this pressure, Mr. Lloyd tendered his resignation on June 18, 1985.

As it was obligated to do, Janney submitted a Uniform Termination Notice to the National Association of Securities Dealers (NASD), describing in detail the nature of

Mr. Lloyd's departure. The NASD is a regulatory body with the authority to revoke or suspend a broker's securities license. After an investigation, the NASD issued a letter of caution to Mr. Lloyd, reminding him that he was obliged to ensure that his personal securities transactions were paid for in a timely fashion. Nothing in the letter suggested that the NASD had concluded that Mr. Lloyd had altered checks or engaged in any fraudulent behavior. The NASD allowed Mr. Lloyd to retain his securities license and to establish his own firm, Lloyd Securities, Inc.

Janney also notified the Funds' trustees of Mr. Lloyd's resignation and assigned Mr. Lloyd's accounts to another executive, but it did not inform the trustees as to the nature of Mr. Lloyd's departure or as to two other incidents which reflected poorly on Mr. Lloyd's professional fitness.[1] Six days following Mr. Lloyd's resignation from Janney, the Funds' trustees elected to follow Mr. Lloyd to his new firm. The Funds' accounts remained at Janney until Mr. Lloyd received regulatory approval to establish Lloyd Securities, whereupon they were transferred to Mr. Lloyd's new firm in September of 1985. While the accounts were at Lloyd Securities, Mr. Lloyd defrauded the Funds by making unauthorized withdrawals and converting the Funds' assets to his personal use. The Funds contend that they incurred losses of close to $3,000,000 as a result of Mr. Lloyd's misdeeds. Mr. Lloyd subsequently entered a guilty plea to charges stemming from his activities at Lloyd Securities and is currently serving a prison sentence.

### B. Procedural Summary

The Funds later initiated this action, in which they allege that Janney breached the fiduciary duty it owed the Funds by not informing them of the circumstances surrounding Mr. Lloyd's resignation. The Funds contend that they would have placed the accounts with another firm had Janney informed them of Mr. Lloyd's conduct while he worked at Janney. Thus, they argue that the losses were incurred as a result of Jan-

ney's failure to disclose the information concerning Mr. Lloyd. Janney has filed this motion for summary judgment and argues that it is not an ERISA fiduciary, and therefore cannot be liable. In the alternative, Janney argues that even if it were a fiduciary, it was under no obligation to inform the Funds of the circumstances surrounding Mr. Lloyd's resignation.

We do not today address the issue of whether Janney is an ERISA fiduciary because of our conclusion that the circumstances complained of fall outside the scope of any fiduciary relationship that may have existed between Janney and the Funds. Thus, any fiduciary obligation did not encompass a duty to inform the Funds of the circumstances regarding Mr. Lloyd. Further, we find no merit in the contentions raised by the Funds in Counts II and III of their complaint. As a result, as we explain below, we must grant Janney's motion for summary judgment as to all claims alleged against it by the Funds.

### II. DISCUSSION

#### A. The Summary Judgment Standard

■ This Court is authorized to award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in at-

---

1. In 1981 and 1984, Janney customers accused Mr. Lloyd of making oral misrepresentations to them regarding securities transactions. In both cases, Mr. Lloyd denied any wrongdoing. The matters were both resolved when settlements were paid to the complaining customers.

tempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

■ In cases where the parties have filed cross motions for summary judgment, as the parties have in the present action, each side contends that no issues of material fact exist. Yet the standard under which the Court weighs the merits of the motions does not change simply because cross-motions have been filed. *United States v. Hall,* 730 F.Supp. 646, 648 (M.D.Pa.1990). Each party must establish that no issues of fact exist and that it is entitled to judgment as a matter of law. As a result, a case will not necessarily be decided at the summary judgment stage merely because cross-motions have been filed. *Id.* (citing *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968)). If an issue of fact exists, both summary judgment motions will fail. With these principles in mind, the Court turns to the substance of the motions.

B. *The ERISA Claim*

1. *Fiduciaries under ERISA*

It is helpful to explore the circumstances under which a party will be deemed a fiduciary for ERISA purposes before proceeding with the analysis. The Third Circuit Court of Appeals has noted that the threshold inquiry with respect to a party's liability under ERISA is whether that party is a fiduciary. *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146, 1148–49 (3d Cir.1989). An ERISA fiduciary is defined thusly:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any mon-

eys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (1985 & Supp.1994).

The Funds base their theory of liability solely on subsection (ii), and argue that Janney became a fiduciary by rendering investment advice for a fee. The Department of Labor has promulgated regulations to better define the situations in which an entity will be deemed a fiduciary under subsection (ii). These regulations provide as follows:

> (c) *Investment advice.* (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii) of [ERISA] . . . only if:
>
> (i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and
>
> (ii) Such person either directly or indirectly (e.g., through or together with any affiliate)—
>
> (A) Has discretionary authority or control, whether or not pursuant to agreement or understanding, with respect to purchasing or selling securities or other property for the plan; or
>
> (B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3–21(c)(1) (1994).

■ Thus, in order to be deemed a fiduciary for ERISA purposes, Janney must have

rendered regular investment advice to the Funds, pursuant to a mutual agreement that the suggestions would serve as the primary basis for the Funds' investment decisions. *Mid–Atlantic Perfusion Assocs., Inc. v. Professional Ass'n Consulting Servs., Inc.*, No. CIV. A. 93–3027, 1994 WL 418990, at *5 (E.D.Pa. Aug. 9, 1994). Stated differently, a fiduciary is one who (1) provides individualized investment advice; (2) pursuant to a mutual agreement; (3) on a regular basis; (4) consisting of recommendations as to the advisability of certain investments; (5) for a fee. *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 935, 130 L.Ed.2d 881 (1995); *see Mid–Atlantic Perfusion*, 1994 WL 418990, at * 5 (must be "a mutual agreement to render individualized investment advice, based on the particular needs of the plan, which services will serve as a primary basis for investment decisions with respect to plan assets"). With this background in mind, we turn to our analysis of the Funds' ERISA claim.

### 2. *The Scope of Janney's Fiduciary Obligation*

The crux of the Funds' complaint is that Janney was under a duty to inform them of the circumstances surrounding Mr. Lloyd's resignation. Janney contends that even if it is deemed a fiduciary, it was under no such duty. A proper analysis of this issue begins by noting that the liability of Janney, as a fiduciary which is not a named fiduciary, is limited to those fiduciary functions it performs. 29 C.F.R. 2509.75–8 (FR–16).[2] Thus, although courts have acknowledged that the responsibilities of a fiduciary are indeed broad, they "must be limited to the scope of the fiduciary's duties." *Pension Fund–Mid Jersey Trucking Industry–Local 701 v. Omni Funding Group*, 731 F.Supp. 161, 176 (D.N.J.1990); *see Arber v. Equitable Beneficial Life Ins. Co.*, 848 F.Supp. 1204, 1212 (E.D.Pa.1994) ("nor does the mere fact that someone is a fiduciary under a plan necessarily mean that he or she is a fiduciary with respect to all fiduciary obligations under the

plan"); *Fechter v. Connecticut General Life Ins. Co.*, 800 F.Supp. 182, 197 (E.D.Pa.1992) (person is a fiduciary only to the extent he exercises control over those breaches of duty on which plaintiff's claims are based).

Thus, the issue for this Court is whether the conduct complained of falls within the scope of the duty Janney may have owed the Funds. Here, the Funds premise their argument as to Janney's role as a fiduciary upon the contention that it rendered "investment advice" to the Funds. 29 U.S.C. § 1002(21)(A)(ii). Since it is undisputed that Janney was never a named fiduciary, its liability must be limited to the function it performed; that is, it must arise from the rendering of investment advice. *Omni Funding*, 731 F.Supp. at 176. The Funds' claims are based not on the substance of the advice it received from Janney, but on their contention that subsumed under the rubric of "investment advice" is the right to be informed as to the nature of the individual providing that advice. In the Funds' words: "The character of the individual rendering advice is at least as important as the advice given itself." Plaintiffs' Memo. at 30.

Unfortunately for the Funds, there is no authority to support the notion that the extent of non-named fiduciary liability is defined by the "character" of those providing the investment advice. The regulations and cases make it clear that the *function* of the non-named fiduciary defines the range of activity for which the fiduciary can be held liable. 29 C.F.R. 2509.75–8 (FR–16); *Omni Funding*, 731 F.Supp. at 176. Thus, one who becomes an ERISA fiduciary by rendering investment advice can be held liable only as to the substance of the advice provided. As a result, we must conclude that the events complained of fall outside the scope of the fiduciary duty Janney may have owed to the Funds, and that Janney was under no duty to relate to the Funds the information concerning Mr. Lloyd. Further, the Funds have failed to produce any evidence to demonstrate a breach of a fiduciary duty on the part of Janney in the actual rendering of

---

**2.** 29 C.F.R. § 2509.75–8 (FR–16) provides, in pertinent part, as follows: "The personal liability of a fiduciary who is not a named fiduciary is generally limited to the fiduciary functions, which he or she performs with respect to the plan."

investment advice. Accordingly, Janney's motion for summary judgment will be granted with respect to the Funds' ERISA claim.

## C. *The Common Law Claims*

### 1. *The Federal Common Law Claim*

■ In Count II of its Complaint, the Funds allege that Janney breached its federal common law obligations by failing to inform the Funds' trustees of the circumstances concerning Mr. Lloyd. The Funds have cited no case in which such a federal common law claim has been advanced; instead, they ask us to recognize such a claim today. In a prior ruling in this case, however, we noted that a court could properly create a federal common law claim only where such a claim served "to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Glaziers and Glassworkers Local 252 Annuity Fund v. Newbridge Sec.*, 823 F.Supp. 1191, 1195 (E.D.Pa.1993) (quoting *Van Orman v. American Ins. Co.*, 680 F.2d 301, 312 (3d Cir.1982)).

■ Thus, while federal courts may properly recognize a federal common law right of action in the ERISA arena, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989); *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1056 (3d Cir.1989), they should incorporate "[o]nly those portions of trust law which complement or are necessary to explain ERISA's statutory scheme." *Glaziers*, 823 F.Supp. at 1195. Further, the courts have recognized that ERISA has established an intricate and thorough regulatory scheme, and that federal common law rights under ERISA should be recognized sparingly. *Plucinski*, 875 F.2d at 1056 (citing *Van Orman*, 680 F.2d at 312). With respect to fiduciary duties, the statutory and regulatory guidelines set forth are clear and detailed, and adequately and fairly address the issues presented to the Court today.

The Funds contend that should ERISA offer them no relief, the facts of this case favor the creation of a cause of action under the federal common law. But the evidence on the record suggests, and the Funds do not otherwise contend, that Janney acted swiftly to protect its customers assigned to Mr. Lloyd as soon as evidence of his wrongdoing surfaced. It effectively terminated Mr. Lloyd's employment and assigned Mr. Lloyd's accounts to another executive. Further, it reported the incident to the NASD, as it was required to do. The Funds' trustees were then free to maintain their accounts with Janney, select another brokerage house to manage the accounts, or follow Mr. Lloyd to his new firm. The trustees, without investigation or inquiry, opted to transfer the accounts to Lloyd Securities, where the losses were incurred. Under these circumstances, we decline to extend relief to the Funds under the rubric of the federal common law. The case presented reveals no gaps in the regulatory scheme begging for supplement. As a result, we must grant Janney's motion for summary judgment with respect to the second count in the Funds' complaint.

### 2. *The State Common Law Claim*

■ The final count of the Funds' complaint contends that Janney's failure to notify the Funds regarding Mr. Lloyd constitutes a breach of a fiduciary duty under state common law. Janney asserts that it is entitled to summary judgment on this claim because ERISA preempts any state law relating to an employee benefit plan. 29 U.S.C. § 1144(a) provides, in pertinent part, that:

> the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

■ ERISA's preemption provision has been interpreted broadly, so as to give effect to Congress's desire to regulate pension benefit plans exclusively at the federal level. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). Thus, a state law will be preempted as long as the law "relates to," in some way, an employee benefit plan. *Id.* at 138–39, 111 S.Ct. at 482–83. Indeed, this Court has held that a plaintiff's breach of fiduciary duty claim relating to the administration of an employee benefit plan brought under state

law is preempted by ERISA. *Shiffler v. Equitable Life Assurance Soc.,* 663 F.Supp. 155, 161 (E.D.Pa.1986). Accordingly, we must conclude that the Funds' breach of fiduciary duty claim is preempted by ERISA, and as a result, we must grant Janney's summary judgment motion with respect to this claim.

## III. *CONCLUSION*

We have held that even if the Funds were to demonstrate at trial that Janney was an ERISA fiduciary, the acts the Funds complain of fall outside the scope of activities for which Janney can be held liable under ERISA. As a result, we will grant Janney's summary judgment motion as to Count I of the Funds' complaint. In addition, this Court has concluded it may not properly create a federal cause of action under the facts presented, and so must grant Janney summary judgment as to Count II of the complaint. Finally, we will grant summary judgment to Janney as to Count III of the complaint based upon our conclusion that ERISA preempts any state law breach of fiduciary duty claim relating to the benefit plans. An appropriate order follows.