**SCHIFFLI EMBROIDERY WORKERS PENSION FUND, Plaintiff,**

v.

**RYAN, BECK & CO., et al., Defendants.**

**Civ. A. No. 91–5433.**

United States District Court, D. New Jersey.

Nov. 22, 1994.

As Amended Dec. 2, 1994.

Adrian M. Foley, Keith A. Krauss, Wendy J. Lario, Connell, Foley & Geiser, Roseland, NJ, for plaintiff.

Marjorie A. Thomas, Klehr, Harrison, Harvey, Branzburg & Ellers, Cherry Hill, NJ, and Karen A. Confoy, Sterns & Wein-roth, Trenton, NJ, for defendants Ryan, Beck & Co., Inc. and Douglas MacWright.

## OPINION

WOLIN, District Judge.

This matter has been opened upon the motions of defendants Ryan Beck & Co. ("Ryan Beck") and Douglas MacWright to dismiss the ERISA claims against them for lack of subject matter jurisdiction and for summary judgment on all state law claims as pre-empted by federal law. The Court has decided this matter on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Court will deny the motions.

## BACKGROUND

This lawsuit arises from investment losses incurred by the Schiffli Embroidery Workers Pension Fund ("Schiffli" or the "Plan") from funds on account with Ryan Beck. Ryan Beck is an investment banking firm and a registered broker dealer. Movants' Brief at 3. Schiffli is multi-employer/employee benefit fund organized and operated pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). At the time of the acts complained of, MacWright was a sales representative at Ryan Beck. Id. The amended complaint alleges omissions and misstatements, scheming to defraud, churning, unauthorized transactions, and making unsuitable investments in violation of Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934; violations of fiduciary and co-fiduciary duties under ERISA; performing transactions prohibited by ERISA; and state common law breach of fiduciary duty, fraud, conversion and misappropriation, negligence, and breach of contract. The complaint names as defendants the movants aforementioned and various Trustees of the Schiffli Plan who, it is alleged, were involved with or allowed the wrongdoing.

Plaintiffs are the Plan itself and Alexander Mauro a participant/beneficiary. Mauro was added as a plaintiff when the complaint was amended, pursuant to a consent order en-

tered into by the parties and signed by the Court on March 29, 1993. However, on December 22, 1993, Bernard Hartnett, a temporary counsel to Schiffli, advised the Court by letter that Mauro had contacted him by telephone and said that he was confused as to why he was in the case, and that he no longer wished to participate in it. Affidavit of Marjorie A. Thomas, dated June 6, 1994 ("Thomas June 6 Aff.") Exhibit D.

Upon receipt of a copy of the letter, the law firm of Pollack & Greene who was then representing Schiffli contacted Mauro. Mauro told them that after speaking with representatives of the defendant Trustees, he no longer wished to participate in the suit. Pollack & Greene so advised the Court by letter dated January 1, 1994. The letter stated that it would "serve as notice to [the Court] of Mr. Mauro's decision." Thomas June 6 Aff. Exhibit E.

This was not the last word from plaintiff Mauro. Plaintiffs have submitted an affidavit signed by him on June 29, 1994 in opposition to the motion to dismiss. There Mauro testifies that he is a Plan participant and that he understands his role in the law suit. He swears that he wishes to continue as a plaintiff, and that he never authorized anyone to withdraw on his behalf. Affidavit of Alexander Mauro.

Movants challenge the subject matter jurisdiction of this Court over the allegations of breach of ERISA fiduciary duties, on the ground that there is not a proper party named as plaintiff. They argue that ERISA does not allow a Plan to bring such a claim in its own right, and that the Act does not provide for federal jurisdiction over such claims brought by a Plan. The motion for summary judgment on the state law claims is on the ground that they are pre-empted by the ERISA claims.

## DISCUSSION

### 1. The Motion to Dismiss for Lack of Subject Matter Jurisdiction

The motion to dismiss for lack of subject matter jurisdiction is quickly dispensed with. The Court finds that Mauro never withdrew from the case. The parties originally consented to the inclusion of Mauro in order to cure a perceived jurisdictional defect. No argument has been made that this Court would lack subject matter jurisdiction with Mauro in the case.[1] Accordingly the motion will be denied.

The Court finds that the letters that are now claimed to announce his withdrawal fall short of establishing that fact. First, the letters are somewhat equivocal. The telephone conversations as reported in the letters of counsel reflect more confusion and uncertainty than a fixed and intelligent resolution to withdraw. The Court notes that there is a suggestion in the letter from Pollack & Greene that Mauro's uncertainty may have been the result of an improper communication by defendant trustees with a represented party.

Finally, whatever Mauro intended previously, he has obviously recanted, and is now ready to proceed as plaintiff. The Court will not give jurisdictional weight to such temporary expressions of reluctance or confusion, particularly in the face of his own sworn

---

1. Both parties have submitted supplemental letter briefs in addition to the briefs allowed by the rules of this Court. Defendants' letter brief in reply to plaintiff's supplemental letter brief, raises for the first time the argument that even if Mauro remains in the case, plaintiffs have failed to allege that he is suing in a representative capacity as required by Federal Rule of Civil Procedure 23.1. This Court will not usually consider arguments raised for the first time in a reply brief, much less in a sur-sur-reply brief, *Jackson v. Doria*, 851 F.Supp. 288, 290 n. 3 (N.D.Ill.1994); *see Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 204–05 n. 29 (3d Cir.1990), for the obvious reason that the opponent has no opportunity to respond. Here the issue of Mauro's derivative status is at best tangentially related to the issue of subject matter jurisdiction. Moreover, the Court has misgivings as to the argument's merit. The authority cited by defendants is not controlling. Although it would not rule on such a question without hearing argument from both sides, the Court believes that the more flexible approach of Rule 23.2 may be more appropriate. Finally, movants may be estopped from raising this objection by the consent order they entered into allowing Mauro into the case in the first place. Consequently, the Court will not consider this argument. Of course, movants remain free to open the issue upon an appropriate motion.

testimony to the contrary. Consequently, the Court will not reach the parties' many well-briefed arguments concerning this Court's subject matter jurisdiction and the standing of a Plan to sue in the absence of Mauro. Plaintiffs' cross-motion to substitute a real party at interest will be dismissed as moot without prejudice. If, in light of this opinion, plaintiffs still wish for a substitution, they may renew the motion.

## 2. The Motion for Summary Judgment of the State Law Claims on the Ground that they are Pre-empted by ERISA

### (A) ERISA Pre-emption

ERISA pre-empts state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has read the pre-emption clause broadly. In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Court stated:

> [t]he phrase "relate to" [is] given its broad common-sense meaning, such that a state law "relate[s] to" a benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan." ... [T]he pre-emption clause is not limited to "state laws specifically designed to affect employee benefits plans."

*Id.* at 47–48, 107 S.Ct. at 1553 (citations omitted); *see Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines*, 463 U.S. 85, 97–98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *see also Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989) (state law claims for breach of contract, breach of covenant of good faith and fair dealing, and intentional infliction of emotional distress pre-empted by ERISA); *Shiffler v. Equitable Life Assurance Soc.*, 838 F.2d 78 (3d Cir.1988) (state law claims for breach of duty pre-empted by ERISA).

■ Despite the broad scope of the pre-emption clause, ERISA does not pre-empt all state law claims. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139–40, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). The Supreme Court has stated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Thus, ERISA would not pre-empt "a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. at 483.

An obvious example was provided when the Supreme Court held that a general garnishment statute is not pre-empted even though it operates to garnish benefits payable under an ERISA plan. *Mackey v. Lanier Collections Agency & Serv., Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *see also Shaw*, 463 U.S. 85, 103 S.Ct. 2890 (no pre-emption of law forbidding discrimination in employee benefits on the basis of pregnancy). In other cases, the "relates to" standard is not as clear and has led to unpredictable results. In *Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir. 1989), employees alleged breach of fiduciary duty, lack of consideration and fraud against their employer when they were induced to accept an irrevocable pay cut in exchange for a benefits package that did not live up to the employer's representations. The Sixth Circuit held that the fiduciary duty and lack of consideration claims were pre-empted, but that the fraud count was not. *Id.* at 162.[2]

■ The extent of ERISA's pre-emption of state law governing outside professionals who provide services to ERISA plans has been described as "problematic," Jay Conison, *The Federal Common Law of ERISA Plan Attorneys*, 41 Syracuse L.Rev. 1049, 1083 (1990), and "unresolved." James F. Jorden, et al., *Handbook on ERISA Litigation*, § 5.03(A) at 5–25 (1992). Suits over benefits are so clearly within the scope of ERISA's pre-emption provision that they provide little guidance with regard to professional service providers. As discussed below, the case law is clear that state law claims against investment advisor fiduciaries are pre-empted, but this fact is not helpful where, as here, the status of defendants as investment advisors is at issue in the case.

---

**2.** *Perry*'s rationale for the distinction is discussed *infra.*

Most cases which have dealt in the area of pre-emption of claims against outside professionals do not propound any universally applicable rationale for their holdings, and so have little weight outside of their specific factual background. Consequently, where the role of defendants in the transaction complained of is either unclear, or settled but not on point with a controlling case, lower courts must attempt to derive some rule of general application from the case law in order to resolve the question before it.

■ There are two different formulations of general principle extant in the Circuits as to when ERISA will pre-empt state law governing a given situation. In the Second Circuit, *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989) said:

> [L]aws that have been ruled preempted are [1] those that provide an alternative cause of action to employees to collect benefits protected by ERISA, [2] refer specifically to ERISA plans and apply solely to them, or [3] interfere with the calculation of benefits owed to an employee.

*Id.* at 146.

On the other hand, the Fifth Circuit has held that "a state law relates to a benefit plan if it affects relations among the principal ERISA entities-the employer, the plan, the plan fiduciaries, and the beneficiaries." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456 (5th Cir.1986), *cert. denied*, 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).

*Aetna* also noted that where a law operated in an area of traditional state power or regulatory authority it would weigh against pre-emption. 869 F.2d at 146. The Second Circuit has often relied on this reasoning. *See, e.g., Rebaldo v. Cuomo*, 749 F.2d 133, 138 (2d Cir.1984) (state hospital regulation); *AT & T Co. v. Merry*, 592 F.2d 118, 121 (1979) (family law implications of garnishing spouses benefits). *Sommers* disapproved of this factor as without basis in the statutory

language. 793 F.2d at 1468 (quoting 29 U.S.C. § 1144(c)(2)).

The Court's research has not uncovered a clear preference between the two, or a statement of its own general policy on the part of the Third Circuit. In *Painters of Philadelphia Dist. Coun. No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146 (3d Cir. 1989), the Third Circuit appeared to apply elements of both the *Sommers* and the *Aetna* rule. *Painters* held first that accountants did not become fiduciaries to a plan when they performed yearly audits for it. 879 F.2d at 1149–51. The court further held that ERISA did not provide a cause of action against the auditors who did not participate in a breach of fiduciary duty, but merely failed to report it to the plan's trustees. *Id.* at 1152. Finally, the court held that a professional malpractice claim against the accountants was not pre-empted by ERISA. *Id.* at 1152–53 & n. 7.

Because the decision turned so heavily on the finding that the accountants were not fiduciaries to the plan, the case appears to follow the reasoning of *Sommers* in defining the scope of ERISA pre-emption by the relationships between the ERISA entities themselves. On the other hand, *Painters* also alludes to the rationale of traditional state regulation employed in *Aetna:*

> [S]tate law has traditionally prescribed the standards of professional liability and, in the absence of clear indicia in the Act or legislative history, we are reluctant to ascribe to Congress an intention to intrude in this area.... We feel that professional malpractice actions brought by a plan are directly analogous to the situation in *Mackey*,[3] ... Congress did not intend to preempt a whole panoply of state law in this area. Thus we conclude that ERISA does not generally preempt state professional malpractice actions.

*Id.* at 1153 n. 7.

Districts in this Circuit have adopted one and then the other test. In *Shulman v. Hosposable Prods., Inc.*, 1991 WL 160340 (D.N.J. Aug. 12, 1991), Judge Fisher applied the *Aetna* test. *Id.* at *3. In *Procacci v.*

---

**3.** As discussed *supra* in *Mackey*, the Supreme Court held that a general garnishment statute

was not pre-empted just because it was ERISA benefits that were being garnished.

*Drexel Burnham Lambert, Inc.*, 1989 WL 121984 (E.D.Pa. Oct. 16, 1989), the court adopted the *Sommers* approach. *Id.* at *9. This Court, in *Muller v. M.D. Sass Assocs., Inc.*, 1992 WL 80938 (D.N.J. April 22, 1992), cites both only to distinguish them, without discussion of their differing premises.

The Court finds that the *Sommers* formulation is the superior approach and the most consistent with the Third Circuit's precedent in *Painters.* Accordingly, the Court will apply it to the situation at bar. The *Aetna* test, by its terms, does not address an important wing of Congress's ERISA construct, the relationship between the Plan and outside professionals who manage its assets or provide the many other services required in its day-to-day operation. Consequently, it is of little use in resolving the dispute now before the Court. Because the *Sommers* test looks to the relationships between all the parties participating or involved in a plan, it contains within it any question arising from a violation of duties derived from that relationship. The inquiry for the Court becomes: did ERISA create the relationship at hand or does the statute purport to regulate it? Thus, the Court notes, it comes the closest to stating a general theory of ERISA pre-emption. More pertinent, it is the best suited to resolving the pre-emption issue now before the Court. If ERISA governs the relationship between Ryan Beck and Schiffli, then state law claims against it are pre-empted. If not, then the claims do not "relate to" the plan and they will survive the motion for summary judgment.

Furthermore, the *Sommers* rule can be extracted from the holdings in many other ERISA pre-emption cases. As already noted, *Painters* can be analyzed in terms of the defendant accountant's lack of an ERISA-defined relationship to the plan. In *Carl Colteryahn Dairy, Inc. v. Western Penn. Teamsters and Employers Pension Fund*, 785 F.Supp. 536 (W.D.Pa.1992), state law fraudulent misrepresentation claims against accountants and actuaries were not pre-empted even though the same claims against trustees were. The Fifth Circuit, in *Perkins v. Time Insurance Co.*, 898 F.2d 470 (5th Cir.1990), found that a participant's claim of misrepresentation against an independent insurance agent was not pre-empted, as it did not "affect the relations among the principal ERISA entities," whereas a claim based on the same facts asserted against the employer was pre-empted. *Id.* at 473. *See also Albert Einstein Medical Center v. Action Mfg. Co.*, 697 F.Supp. 883 (E.D.Pa.1988) (medical provider's suit against a plan for misrepresentation not pre-empted). *Cf. James A. Dooley Associates Employees Retirement Plan*, 654 F.Supp. 457 (E.D.Mo.1987) (ERISA pre-empted state law claims for breach of fiduciary duty and for negligence brought by a plan and several trustees of the plan against another trustee).

Finally, *Aetna*'s emphasis on traditional areas of state regulation lacks content. Federal law may pre-empt state regulation regardless of its status, thus whether that regulation is traditional does not guide the Court as to whether it is pre-empted. Congress demonstrated this principle in the savings clause of ERISA in which state insurance laws are expressly exempted from federal pre-emption by the Act. 29 U.S.C. § 514(b)(2)(A). If state insurance law were protected by its obviously traditional status, the savings clause would be superfluous. Furthermore, ERISA has been held to pre-empt other traditional areas of state power, such as taxation. *National Carriers' Conference Comm. v. Heffernan*, 454 F.Supp. 914 (D.Conn.1978). This principle is not in conflict with the Third Circuit's position in *Painters*, 879 F.2d 1146. In *Painters*, the Court of Appeals rejected the proposition that ERISA pre-empts all professional malpractice actions of any kind. 879 F.2d at 1153 n. 7 ("ERISA does not generally preempt state professional malpractice actions"). It did not address those cases in which it is a close question as to whether the professional relationship implicates a relationship controlled by ERISA. The further one enters the penumbra of the core ERISA relationships, the less useful tradition is as a guide to Congressional intent to pre-empt.

Because Ryan Beck continues to maintain that they are not fiduciaries, the "ERISA penumbra" is an important issue in this case. *Pension Fund–Mid Jersey Trucking Indus.–*

*Local 701 v. Omni Funding Group,* 731 F.Supp. 161 (D.N.J.1990) found a non-fiduciary bank liable for an implied ERISA remedy, when a fiduciary managed plan assets through the bank and the bank knowingly participated in a scheme to enrich the fiduciary. The court looked to whether:

(1) the plaintiff is one of the class for whose benefit the statute was enacted;

(2) there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one;

(3) such a remedy would be consistent with the underlying purposes of the legislative scheme; and

(4) it is appropriate to infer a cause of action based solely on federal law.

*Id.* at 177 (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)). Many other Circuits also find an implied cause of action for non-fiduciaries who knowingly participate in the wrongdoing of fiduciaries. *Brock v. Hendershott,* 840 F.2d 339, 342 (6th Cir.1988); *Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209, 1220 (2d Cir.1987); *see also Fink v. National Savs. & Trust Co.,* 772 F.2d 951, 958 (D.C.Cir.1985); *Thornton v. Evans,* 692 F.2d 1064, 1077–78 (7th Cir.1982). The Ninth Circuit's refusal to adopt the "knowing participation" theory in *Nieto v. Ecker,* 845 F.2d 868 (9th Cir.1988), has been criticized by district courts in the Third Circuit, *see Dole v. Compton,* 753 F.Supp. 563, 568 (E.D.Pa.1990); *Omni Funding,* 731 F.Supp. at 179, and elsewhere. *See generally* Morton Klevan & Beth E.S. Schumann, *Liabilities of Professionals Under ERISA,* C724 ALI–ABA 397 (1992).

The reasoning of the cases imposing liability on knowingly participating non-fiduciaries is sound. Moreover it rests on clear statements of legislative intent as to the broad purpose of ERISA's remedial scheme. *See e.g.,* House Conference Rep. No. 386, 101 Cong. 1st Sess. 433, *reprinted in* 1989 U.S.Code Cong. and Admin.News 1906, 3018, 3036 ("It remains the intent of Congress that courts ... fashion legal and equitable remedies that not only protect participants and beneficiaries, but deter violations of the law, as well."). Such statements of Congressional intent, and the majority view in the law to impose ERISA liability on parties on the edges of the core ERISA relationships, strongly counsel finding that state law remedies against these same parties are preempted.

■ Two further points are necessary. First, the Court is aware of the line of cases which hold that state law claims are preempted regardless of whether the defendants are ERISA fiduciaries. *Consolidated Beef Indus. v. New York Life Ins. Co.,* 949 F.2d 960 (8th Cir.1991); *Gibson v. Prudential Ins. Co. of Am.,* 915 F.2d 414 (9th Cir.1990); *Howard v. Parisian, Inc.,* 807 F.2d 1560 (11th Cir.1987). These cases, however, all dealt with disputes over benefits, or the calculation of benefits. Unlike the *Omni Funding* court, this Court cannot view the preemption doctrine from cases involving benefits and their administration as truly apposite to questions involving outside professional service providers. *Cf.* 731 F.Supp. at 170 n. 7. The *Howard* court observed: "Allowing *beneficiaries* to bring wrongful denial of benefit claims against non-fiduciary administrators would upset the nationwide scheme of Congress." 807 F.2d at 1565 (emphasis added). This statement of rationale for a decision to pre-empt suggests that the threat to uniformity and the Congressional scheme is qualitatively different when dealing with a defendant service provider who might not be within ERISA's sphere at all. Moreover, *Omni Funding*'s contrary reasoning on similar facts to those presented here is difficult to reconcile with the fate of the non-fiduciary accountants in *Painters,* for whom state law claims were not pre-empted. 879 F.2d at 1152–53.

■ Second, it must not be imagined that the Court is contemplating a rule under which a party could be both within an ERISA-controlled relationship with another ERISA entity, and owe duties with respect to plan benefits or administration to the other entity that flow from some other body of law. Those other duties would be pre-empted. *Sommers* did not hold to the contrary. There, claims against the employer's president were held not pre-empted because they were based on his common-law fiduciary duty

as a corporate officer. This relationship was entirely independent of any controlled by ERISA. 793 F.2d at 1468.

Professor Conison argues that this analysis "begs the question," Conison, *supra* at 1089 (discussing *Sommers*), because the entire point of the pre-emption doctrine is that Congress has displaced the separate, state law relationships with the ERISA legislation. Nonetheless, the underlying premise remains sound. ERISA's pre-emptive reach is defined by the scope of the relationships regulated by the statutory structure and the duties to which those relationships give rise. If a defendant is within one of those relationships, state law duties *from that relationship* are pre-empted. On the other hand, if the legal relationship of the parties is founded solely on state law, it will not be affected by the federal scheme.

### (B) Summary Judgment

The foregoing discussion establishes that the key to the question of pre-emption is the relationship of the movants to the other ERISA entities in the case. If these defendants are found to have been fiduciaries, then the pre-emption inquiry is over. They were fiduciaries if they were the Schiffli Plan's investment advisors or exercised discretion with regard to investmenting of the Plan's assets. 29 U.S.C. § 1002(21)(A).[4] The relationship between investment advisor fiduciaries, ERISA Plans and Plan funds is controlled by 29 U.S.C. § 1102–11. Accordingly, courts have found claims against investment advisors for breach of their state law fiduciary duties to their customers are pre-empted. *Cox v. Eichler,* 765 F.Supp. 601, 606–07 (N.D.Cal.1990); *Procacci,* 1989 WL 121984; *Omni Funding,* 731 F.Supp. at 170. Similarly, if this Court is persuaded to adopt the "knowing participation" theory of liability, and it appears that movants are in such a culpable relationship with other ERISA fiduciaries, the state law claims against them also may be pre-empted.

Review of the standard for granting summary judgment reveals that it is far too premature for the Court properly to resolve this core issue. Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir.1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. 225 Cartons,* 871 F.2d 409, 419 (3d Cir.1989).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Id.*

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

---

4. In its Opinion dated September 25, 1992, this Court found that the complaint stated a claim against defendants as investment advisors, as distinct from investment managers. The Court found that the claim against defendants as invest- ment managers was barred by the lack of a writing as specified in 29 U.S.C. § 1002(38). Of course, the Court expressed no opinion as to whether defendants were investment advisors or not; that question remains open.

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Here, neither party has submitted affidavits or other sworn testimony on the issue of movants' status as fiduciaries or knowing participation in fiduciaries' wrongdoing. Movants have attempted to remove the issue from consideration by conceding for the purposes of the motion that they were fiduciaries to the Plan.[5] Movants' Brief at 21 n. 6. The pleadings reveal sufficient dispute over these material facts to preclude summary judgment absent a substantial showing by the movant. Thus, movants cannot be said to have met their burden of showing that there is no issue of material fact on this point. The Complaint lays out in detail the relationship between Schiffli, Ryan Beck and MacWright, and how it came to pass. In particular, the Complaint alleges that at a key meeting between Schiffli Trustees and MacWright, Ryan Beck was hired as an investment advisor and instructed as to Schiffli's investment needs. First Amended Complaint ("Complaint") ¶ 17.

MacWright admits that this meeting took place. MacWright's Answer to the First Amended Complaint ("MacWright's Answer") ¶ 17. Both MacWright and Ryan Beck make blanket denials of Schiffli's version of the meeting and the allegations as to trading practices. They deny that they were Schiffli's investment advisor. They claim that they had no control over the assets, nor did they provide investment advice. They claim that all trades on Schiffli's account were made with the Trustees' "approval, direction and/or ratified by Schiffli and the Trustees." Ryan Beck's Answer to the First Amended Complaint ("Ryan Beck's Answer") ¶ 20.

■ Congress intended that the courts look to the totality of the relationship to determine whether an outside professional advisor is a fiduciary to an ERISA plan. *See*

House Conference Rep. No. 93–1280, 93d Cong.2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 5038, 5103. The test is whether the defendant had discretionary control over plan assets or gives regular, individualized advice to be used as the primary basis for the Plan's investment decisions. 29 U.S.C. § 1002(21)(A); 29 C.F.R. § 2510.3–21. "[I]t must be recognized that there will be situations where such consultants and advisers may because of their special expertise, in effect, be exercising discretionary authority or control ... regarding [the Plan's] assets." 1974 U.S.Code Cong. & Admin.News at 5103. Courts have been sensitive to the practice of "rubber stamping" investment advisors' recommendations as to the disposition of plan assets in finding that the advisor had de facto discretionary authority. *Stanton v. Shearson Lehman/American Express, Inc.*, 631 F.Supp. 100, 103 (N.D.Ga.1986). Thus, movants' answer that Schiffli "ratified" the trades does not resolve the issue.

■ It is not disputed that there was no written agreement defining the relationship between Schiffli and the defendants. For the same reasons discussed immediately above, however, this fact is not dispositive. *See also Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, Civ. No. 91–5433, 1992 WL 249880, Slip op. at 12–13 (D.N.J. Sept. 25, 1992) (defendants may be liable as investment advisor ERISA fiduciaries even though there is no written acknowledgement of the relationship). On the other hand it has been held that the alleged fiduciary advisor must have been made aware that he was acting as an ERISA fiduciary before liability will be imposed. *Omni Funding*, 731 F.Supp. at 167 (citing 40 Fed. Reg. 50,813 (1975)). Here again the substance of the disputed meeting is crucial.

Thus, to the extent that Ryan Beck's motion for summary judgment on the state law claims as pre-empted turns on the resolution

5. Because deciding the pre-emption issue requires resolving the status of Ryan Beck as either fiduciary, participant, or ERISA non-entity, movants' concession for the purposes of this motion that they are fiduciaries is not helpful. Moreover, the Court notes that the purpose of summary judgment, to pierce to the heart of the complaint and resolve those issues as to which there is no actual dispute, would be frustrated if a movant could make this type of *arguendo* admission on a point that will control the entire case. Other logical difficulties posed by movants' hypothetical admission of fiduciary status are explored in the section below.

of defendant's relationship to Schiffli, it must be denied as involving disputed questions of material fact. Moreover, the possibility that Ryan Beck may be liable under the "knowing participation" theory, discussed above, has not been addressed either in the pleadings or in the moving papers.

### (C) Pleading in the Alternative

The intuitive solution is to allow the case to proceed with the ERISA based claims and the state law claims pled in the alternative. This is the disposition for which plaintiff argues. The movants, however, maintain that this would be improper. They argue that pre-emption and whether plaintiff can prevail upon their ERISA claims are different issues. Pre-emption, they argue, turns "solely on whether the claim is related to an ERISA plan." Movants' Brief at 14.

This argument is based on yet another rule of ERISA pre-emption; that all claims that "relate to" a plan are pre-empted even if the Act provides no remedy for the alleged wrong. *Lister v. Stark,* 890 F.2d 941, 946 (7th Cir.1989), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990); *Weir v. Northwestern Nat. Life Ins. Co.,* 796 F.Supp. 846, 849 (E.D.Pa.1992); *see Shulman v. Hosposable Prods., Inc.,* 1991 WL 160340, at *3 (D.N.J. Aug. 12, 1991) (ERISA pre-empted claim even though plaintiff lacked standing to sue under the Act). This rule is consistent with the meaning of the pre-emption doctrine. The fact that a plaintiff is without remedy does not mean that Congress has not addressed the issue. On the contrary, it merely shows that Congress has weighed the matter and struck the balance in defendant's favor.[6] The Third Circuit has not addressed the issue of alternative pleading, but has applied rule *sub silentio. Pane v. RCA Corp.,* 868 F.2d 631 (3d Cir.1989); *Shiffler v. Equitable Life Assurance Soc. of the United States,* 838 F.2d 78 (3d Cir.1988).

However, despite the soundness of the above rationale, it does not apply in the situation before the Court. All the cases cited above concern suits for benefits. In each it was clear that they "related to" the plan, and the courts so found. Here the crux of the case is not whether ERISA affords a remedy, but where to draw the boundary of ERISA's reach. If movants were neither fiduciaries, nor liable through the "knowing participation" rule, then they are not in one of the relationships governed by ERISA. If this is the case, then, following *Sommers'* rationale, the state claims against them do not relate to the plan, and, therefore, are not pre-empted. To adopt the contrary reasoning would be to ignore the implications of the Third Circuit's holding in *Painters,* in which, it will be remembered, claims against a Plan's non-fiduciary accountants were held not to be pre-empted. 879 F.2d at 1152–53. Ryan Beck's argument, that no ERISA remedy does not mean no ERISA pre-emption, requires the predicate finding that ERISA in fact governs the situation.

Movants' strategy reveals the circularity of their argument. Having conceded for the purposes of this motion only that they are ERISA fiduciaries, Movants Brief at 21 n. 6., they seek summary judgment on the state claims. If they were to prevail on this motion, they would resume litigating their status as ERISA fiduciaries. If successful on this point, the state law claims having already been struck, these defendants could walk away from the case without ever having addressed the substance of the allegations against them.

It would not be reasonable or fair to allow the case to proceed in this posture. Although the Court's research has not discovered a case where a court explicitly addressed the question of pleading ERISA and potentially pre-empted state claims in the alternative, some courts have fashioned other mechanisms to avoid the inequity of forcing a plaintiff to rely wholly on one or the other theory in the early stages of the case. In *Cox v. Eichler,* 765 F.Supp. at 606, notwithstanding the fact that the court found defen-

---

**6.** The Court rejects the contrary reasoning of *Perry v. P\*I\*E Nationwide, Inc.,* 872 F.2d 157, 162 (6th Cir.1989) ("pre-emption should apply to a state law claim only if Congress has provided a remedy for the wrong asserted"), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990).

dants "[[e]]l squarely within the definition of an ERISA fiduciary," the court dismissed state law claims without prejudice with leave to reinstate them if, during discovery, it appeared that defendants' conduct was not in the course of acting as an ERISA fiduciary. *Id.* at 607. This result appears sensible and in keeping with the spirit of the analysis set forth here. The Court sees little substantive difference between the solution of the *Cox* court and allowing the claims to be pled in the alternative.

These defendants may feel that the Court has collapsed the pre-emption inquiry into the underlying merits of the case. They may argue that, under the approach taken here, summary judgment on pre-emption will never be possible in a case where a financial broker is charged with violations of both state law and ERISA in connection with plan investments. This problem is more apparent than real, however, and is merely a product of facts peculiar to the case. It is possible that both the pre-emption issue and the liability of defendants may both turn on the Court's ultimate finding as to their relationship to the plan. If so, it will be because other controlling facts, such as the specifics of the trades or whether and to what extent losses were incurred, are no longer in dispute. In that case, the only issue left to litigate will be the type of duty owed by movants to the Plan. In this scenario, both liability and pre-emption will be decided together.

Other scenarios are also possible, however, and it may be that the question of movants' fiduciary status and/or ERISA liability will be settled sooner than they think. Moreover, even if the facts of the case at bar do lead to simultaneous resolution of pre-emption and ultimate liability, the Court cannot see that as so insuperable an obstacle as to warrant throwing out plaintiff's state law claims at this juncture. Finally, the parties remain free to move for a preliminary determination by the Court on the issue of movants' status with relation to the plan.

## CONCLUSION

For the reasons discussed above, the motion to dismiss for lack of subject matter jurisdiction will be denied. The motion to dismiss the state law claims will also be denied, without prejudice. The record before the Court is insufficient to find that there is no dispute of material fact on this issue. If, as the case progresses, the factual record makes it appear that the state law claims are pre-empted under the analysis set forth in this Opinion, the motion may be renewed.

An appropriate Order is attached.